UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Entitled Action Pending in U.S.D.C. Northern District of Florida
Case No.: 4:21-cv-00187-MAF

| | |
|---|---|
| FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITS OF THE NAACP, COMMON CAUSE, and DISABILITY RIGHTS FLORIDA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LAUREL M. LEE,<br><br>    in her official capacity as Florida Secretary of State, et al.,<br><br>    Defendants,<br><br>REPUBLICAN NATIONAL COMMITTEE and NATIONAL REPUBLICAN SENATORIAL COMMITTEE,<br><br>    Intervenor-Defendants. | Case No. 1:21-mc-00137 |

# **PLAINTIFFS' OPPOSITION TO HERITAGE ACTION FOR AMERICA'S MOTION TO QUASH SUBPOENA FOR A DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

On October 19, 2021, the U.S. District Court for the Southern District of Florida issued an order directing Heritage Action to produce documents Plaintiffs moved to compel pursuant to a documents subpoena issued on August 5, 2021.  2021 WL 4891300, *4 (S.D. Fla. Oct. 19, 2021) (Heritage Action Motion to Quash ("Mot."), Ex. G).  In that order, the court rejected many of the same arguments that Heritage Action recycles here in an effort to quash Plaintiffs' deposition subpoena.  Contrary to Heritage Action's assertions, Plaintiffs' subpoena seeks deposition testimony that is relevant and proportional to the needs of *Florida State Conference of Branches and Youth Units of the NAACP, et al. v. Laurel M. Lee, et al.*, No. 4:21-cv-00187 (N.D. Fla.) (the "Underlying Case"); Heritage Action was given ample time to comply with the deposition subpoena; and the deposition subpoena is proper and complete.  The motion to quash should therefore be denied.

The district court in the Underlying Case has set a final deadline of November 10, 2021, for all discovery in the case.  The court granted an extension to November 10 "solely for the purpose of conducting the Rule 30(b)(6) deposition of Heritage Action."  *See* Underlying Case, ECF No. 273 (attached as Exhibit A).  Resolution of Heritage Action's motion to quash has been delayed through no fault of Plaintiffs because, *inter alia*, Heritage Action initially filed this motion in the wrong district court.  In light of the above, Plaintiffs respectfully request that this Court set an expedited schedule for Heritage Action's reply brief and any decision by the Court on Heritage

Action's motion[1] to ensure that, if the Court denies the motion to quash, Plaintiffs will be able to take the 30(b)(6) deposition of Heritage Action, on or before the deadline on Wednesday, November 10, 2021.

## **BACKGROUND**

Plaintiffs' deposition subpoena seeks information relevant to claims in the Underlying Case. In that case, Plaintiffs challenge several provisions of Senate Bill 90, An Act Relating to Elections, 2021 Fla. Sess. Law Serv. ch. 2020-11 (West) ("SB 90"), enacted in Florida on May 6, 2021. Although Florida Secretary of State Laurel M. Lee publicly heralded the 2020 election as "safe, secure, and orderly,"[2] the Florida Legislature rushed to restrict voting rights by passing SB 90.[3] As reported in the media and confirmed by certain documents obtained by Plaintiffs in discovery, Heritage was intimately involved in meeting, conferring, and strategizing with key Florida legislators about SB 90. SB 90 features provisions designed to cut off voters from critical resources, such as ballot drop boxes, that facilitated voter participation in the 2020 elections.[4] In enacting SB 90, the State also sought to hinder the efforts of organizations and individuals attempting to mobilize voters by limiting their ability to assist in the collection and delivery of vote-by-mail ballots, and provide assistance to voters standing in line to vote.[5] None of these

---

[1] Given the time-sensitivity of this case, Plaintiffs further request that the Court decide this dispute based on the arguments in the Parties' memoranda and without oral argument.

[2] Underlying Case, ECF No. 45, First Amended Compl., ¶ 2 (attached as Exhibit B).

[3] *Id*. ¶¶ 53–73.

[4] *Id*. ¶¶ 74–84, 93–96.

[5] *Id*. ¶¶ 85–114.

restrictions are justified by a countervailing state interest.[6]  SB 90's new restrictive regime took effect immediately upon being signed by Governor Ron DeSantis on May 6, 2021.[7]

The hurried legislative process that led to SB 90's enactment was marked by procedural deviations from the ordinary legislative process in Florida.[8]  The public was largely excluded from the process.[9]  Lobbyists and activists from Heritage, however, played a crucial role.[10]  Indeed, the documents that Heritage Action and the Heritage Foundation have produced thus far reveal text conversations with at least one Florida State Legislator.[11]  Further, during a deposition in the Underlying Matter, Mark Earley, the Leon County, Florida Supervisor of Elections, testified that the "underlying reasoning behind the bill was to adhere to agendas" of the "Heritage Foundation . . . [and] the remain[s] of the Trump campaign."  Mark Earley Dep. Tr. 117:5–118:8, Oct. 8, 2021 (attached as Exhibit D).  Supervisor Earley further testified that Heritage's role was either "a matter of fact or a matter of understanding from everybody involved" in SB 90's passage, including legislators.  *Id*.

Plaintiffs commenced the related action in the Northern District of Florida on the day SB 90 was enacted, seeking declaratory and injunctive relief to block several provisions (the "Challenged Provisions") from being enforced.  Plaintiffs' operative Complaint alleges that the Challenged Provisions unreasonably and unjustifiably burden the right to vote, in violation of the

---

[6] *Id*. ¶¶ 115–124.

[7] *Id*. ¶¶ 71, 73.

[8] *Id*. ¶¶ 53–73.

[9] *Id*. ¶ 71.

[10] *See infra*, at p. 10.

[11] Text Messages between Florida State Rep. Mike Beltran and Heritage, produced by Heritage on October 29, 2021 (attached as Exhibit C).

First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution; Section 2 of the Voting Rights Act; and Title II of the Americans with Disabilities Act.  Plaintiffs' operative Complaint specifically alleges, among other things, that the Challenged Provisions intentionally discriminate based on race,[12] and that the Challenged Provisions create discriminatory results,[13] unduly burden the right to vote,[14] fail to provide reasonable accommodations for voters with disabilities,[15] and violate the First Amendment.[16]  In accordance with the expedited schedule set by the Court in this time-sensitive election case, Plaintiffs have diligently pursued both party and non-party discovery under the Federal Rules of Civil Procedure, supplemented by public records requests made under Florida state law.

On September 7, 2021, Heritage Action objected to Plaintiffs' document subpoena, and refused to produce any documents.  On October 6, 2021, while Plaintiffs' Motion to Compel was pending, Plaintiffs served on Heritage Action a separate subpoena to take the deposition of a corporate designee of Heritage Action, pursuant to Federal Rule of Civil Procedure 30(b)(6), concerning the subjects related to the documents subpoena.  Heritage Action did not respond, but instead waited until October 19, 2021—the very same day the Southern District of Florida *granted* Plaintiffs' Motion to Compel Heritage Action to produce documents—to file a Motion to Quash Plaintiffs' deposition subpoena in the Southern District of Florida (Mot. Ex. E).

---

[12] Ex. A, ¶¶ 186–223.
[13] *Id.* ¶¶ 125–141.
[14] *Id.* ¶¶ 141–151.
[15] *Id.* ¶¶ 152–166.
[16] *Id.* ¶¶ 167–176.

4

The Southern District of Florida promptly denied that motion without prejudice because the Southern District of Florida was not the correct forum for the dispute to be considered since the deposition would take place where the deponent gives their testimony—presumably, Washington, D.C. Heritage Action waited a week and half to re-file the current motion to quash in the appropriate District, despite Plaintiffs' repeated efforts to negotiate an accommodation with Heritage Action. On November 1, 2021, the Northern District of Florida granted Plaintiffs' motion to extend the discovery deadline to Wednesday November 10, 2021 "solely for the purpose of conducting the Rule 30(b)(6) deposition of Heritage Action." Ex. A (attached).

Heritage Action's Motion to Quash rehashes arguments that the Southern District of Florida rejected in denying Heritage Action's bid to block Plaintiffs' document subpoena. Heritage Action now contends that Plaintiffs' deposition subpoena (1) did not provide reasonable time to comply; (2) is unduly burdensome and seeks irrelevant information; and (3) is technically deficient. None of Heritage Action's arguments has merit. To the contrary, Plaintiffs provided sufficient time for Heritage Action to comply; the information is relevant and proportional to the needs of the Underlying Case; and the subpoena is proper and complete. Because there is no justification for denying Plaintiffs the opportunity to examine a corporate designee of Heritage Action concerning the documents that Heritage Action and its affiliate, the Heritage Foundation, have now produced, the Motion to Quash should be denied.

**ARGUMENT**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Further, "[t]he burden lies on the party resisting discovery"—here, Heritage Action—"to show that the documents requested are either unduly burdensome or privileged."  *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. MC 20-5 (CKK), 2020 WL 2496986, at *2 (D.D.C. May 14, 2020).

I.     **The Deposition Seeks Highly Relevant Information and Does Not Unduly Burden Heritage Action.**

Heritage Action argues that "[t]he discovery sought under the Deposition Subpoena is [] cumulative to the discovery sought under the Document Subpoena . . . [and] essentially asks for Heritage Action to talk through the documents it has produced in accordance with the Document[] Subpoena."  Mot. at 17–18.  That argument is misguided.  In a deposition, Plaintiffs seek, *inter alia*, a more complete understanding of the documents that Heritage Action produced to Plaintiffs last Friday, October 29, 2021.  Plaintiffs do not have to choose between different methods provided in the Federal Rules of Civil Procedure ("Rules") when seeking relevant discovery.  Rather, "the various methods of discovery as provided for in the Rules are clearly *intended* to be cumulative, as opposed to alternative or mutually exclusive."  *Crider, Inc. v. Convenience Food Sys., Inc.*, No. CV604-102, 2005 WL 8157607, *1 (S.D. Ga. Aug. 15, 2005) (citation omitted) (emphasis added). And, "[p]arties are ordinarily entitled to test interrogatory responses and document production through depositions."  *Doe v. Trump*, 329 F.R.D. 262, 274 (W.D. Wash. 2018).

A Rule 30(b)(6) deposition would allow Plaintiffs to explore (for example) Heritage Action's oral communications, in addition to its written communications, and to probe, clarify, and discover the meaning and significance of, and the evidentiary foundation for, the documents

produced. Plaintiffs' document subpoena (and the Southern District of Florida's Order compelling Heritage Action to produce documents in response to it) do not absolve Heritage Action of its duty to comply with Plaintiffs' subpoena for a deposition. Deposition testimony, in addition to document productions, would provide a more complete understanding of Heritage Action's role in the passage of SB 90, which is relevant to Plaintiffs' causes of action in the Underlying Case.[17]

### A.     Plaintiffs Deposition Subpoena Seeks Highly Relevant Information.

Rehashing the same arguments from its earlier opposition to Plaintiffs' motion to compel the production of documents, Heritage Action argues again that the discovery Plaintiffs seek is irrelevant and could be obtained through other sources. Mot. at 12–17. The Southern District of Florida already considered and rejected Heritage Action's arguments related to relevance, burden, and First Amendment associational privilege. 2021 WL 4891300 (Mot. Ex. G). Heritage Action's arguments fare no better in its attempt to avoid a 30(b)(6) deposition than it did in its effort to avoid producing relevant documents.

The information Plaintiffs seek are of primary relevance to Plaintiffs' intentional discrimination claims. Among the factors that courts consider when assessing intentional discrimination claims are: (1) the specific sequence of events leading up to the law's passage, (2) the legislature's departure from the normal procedural sequence, (3) statements and actions of key legislators, and (4) the foreseeability of the disparate impact. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–8 (1997); *see also Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d. 1299, 1322 (11th Cir. 2021). As the Court in *Arlington Heights* noted: "determining whether invidious discriminatory purpose was a motivating factor demands a

---

[17] In fact, that is the very point of litigants having access to different forms of discovery. *See Doe*, 329 F.R.D. at 274.

sensitive inquiry into *such circumstantial and direct evidence of intent as may be available*." 429 U.S. at 266 (emphasis added). The court in the Southern District of Florida concluded that the information Plaintiffs sought in their document subpoena "satisfied th[e] very low bar [of relevance] because the information requested in the subpoenas could constitute circumstantial evidence of intentional discrimination." 2021 WL 4891300, *3 (Mot. Ex. G, at 5). The discovery that Plaintiffs seek is directly relevant to the *Arlington Heights* analysis. A deposition of Heritage Action could: (1) provide circumstantial evidence about the "specific sequence of events leading up to" SB 90's passage, including the extent to which Heritage may have drafted provisions of the bill; (2) shed light on the legislature's reason for departing from its normal procedural sequence when passing the law, including whether the legislature's reliance on an advocacy organization like Heritage Action constituted such a departure; (3) illuminate the legislators' understanding of the foreseeable impact of the law based on information provided by Heritage Action; and (4) put in context, or provide the basis of, key legislators' statements and actions. *Arlington Heights*, 429 U.S. at 267–68.

The Southern District of Florida court flatly rejected Heritage Action's mischaracterization of Plaintiffs' aim in seeking the deposition, noting that Plaintiffs do not seek to employ a "cat's paw" theory to impute Heritage Action's intent to the Florida State Legislature. 2021 WL 4891300, *2 (S.D. Fla. Oct. 19, 2021) (Mot. Ex. G at 3–5). Heritage Action nevertheless repeats that argument here. Mot. at 15–16. As the Southern District of Florida court reasoned, "communications between Heritage and key legislators involved in the passage of Senate Bill 90 certainly constitute circumstantial evidence of intent for purposes of Plaintiffs' intentional discrimination claims." *Id*. at 5. For the reasons explained above, Plaintiffs seek to discern the *Legislature's* intent, not Heritage Action's.

8

The deposition testimony sought by plaintiffs is equally relevant, fitting well within the liberal "relevance" standard. *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 3 (D.D.C. 2018) ("Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.") (quotation marks omitted).

### B. Plaintiffs' Targeted Deposition Subpoena Does Not Impose Undue Expense or Burdens on Heritage.

Plaintiffs' request for a 30(b)(6) deposition is proportional to the needs of the case. *See AbbVie Inc. v. Boehringer Ingelheim International GmbH*, 2018 WL 2337133, *4 (D. Del. May 23, 2018) (denying motion to quash third-party subpoena where "[t]he burden of production seems proportional to the stakes in this case."). Here, the stakes are high—implicating the rights of Florida's 14 million voters who cast ballots for dozens of different offices and ballot questions. And Heritage Action holds information that cannot be readily garnered from any other sources.

Heritage Action vaguely asserts that compliance with Plaintiffs' subpoena would create an "undue burden" on Heritage Action. Mot. at 11. However, Heritage Action failed to provide any evidence or specific information to support the asserted burden. Indeed, the Southern District of Florida noted that Heritage Action had "not pointed to any financial or other burden it would face by complying with Plaintiffs' subpoena[]." 2021 WL 4891300, *4 (Mot. Ex. G, at 6). The same is true here. Further, the Southern District of Florida court noted that Plaintiffs had offered, but Heritage Action refused to negotiate to further narrow the scope of their requests. *Id*. Similarly, Plaintiffs' deposition subpoena was met by Heritage Action's unwillingness to negotiate. *See* Ex. E. On multiple occasions, Plaintiffs asked if Heritage Action was willing to re-consider their position or agree to limiting the deposition to five hours. Exs. E, F. It would not. *Id*.

9

Moreover, Plaintiffs have taken steps to reduce burdens associated with compliance with the subpoena. For example, Plaintiffs have issued a deposition subpoena only to Heritage Action (not The Heritage Foundation). And, Plaintiffs crafted their list of 30(b)(6) topics to encompass just seven narrow topics relevant to the SB 90 claims at issue.

### C. The Deposition Subpoena Does Not Implicate the First Amendment Associational Privilege.

The Southern District of Florida previously rejected Heritage Action's argument that the First Amendment prevented Plaintiffs from obtaining any discovery from Heritage. The same conclusion should apply to the deposition testimony sought from Heritage Action. *See Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 195 (D.D.C. 2018) ("Just as [subpoena recipient] cannot avoid production of documents …, he cannot avoid answering deposition questions on grounds of privilege").

Although Plaintiffs agree that the First Amendment protects the right to associate and petition the government, those protections are not applicable to the deposition testimony sought from Heritage Action here. With respect to the former, Plaintiffs do not seek information that would chill Heritage's associational rights in any way—Plaintiffs are not seeking to compel testimony regarding any internal Heritage documents, such as membership lists or donor information. Rather, Plaintiffs are only seeking to discover information regarding Heritage's external communications. In addition, the right to petition the government does not encompass a right to keep all communications with the government private.

The associational privilege protects against compelled disclosure that would adversely affect an organization by "induc[ing] members to withdraw . . . and dissuad[ing] others from joining because of fear of exposure." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958). Associational privilege may also apply when disclosure would likely adversely affect an

10

organization's ability "to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *Id*. at 462–63.  In *NAACP v. Alabama*, the NAACP successfully invoked the privilege when the State of Alabama—then a segregationist stronghold—sought the release of the NAACP's membership lists.

The situation here could not be more different.  Plaintiffs are not seeking to unmask individual Heritage Action members.  Plaintiffs are not requesting testimony regarding Heritage Action's membership roster or its email list.  Plaintiffs are not seeking any testimony on Heritage Action's donors or finances.  Nor are Plaintiffs seeking to compel the disclosure of internal Heritage Action communications.  The subpoenas do not request the disclosure of any information that, if shared, would "induce [Heritage] members to withdraw" or "dissuade others from joining for fear of exposure."  *Id*.  As Heritage Action itself admitted in the Objections it served to Plaintiffs' documents subpoena, its "position on election reform is already a matter of public record."  Earlier this year, Heritage Action's own press releases promoted its work to "encourag[e] Florida lawmakers" to enact "strong legislation" related to the state's election administration.[18]  Further, Heritage Action's Executive Director Jessica Anderson stated that "[i]n some cases, [Heritage] actually draft[s] [the bills] for [the legislatures]."[19]  Representatives from HAFA also sought to have conversations about the "specifics of the bill" with State Representative Blaise

---

[18] Press Release, *Florida Lawmakers Must Act to Protect Elections From Outside Influence*, Heritage Action for America, April 26, 2021, https://heritageaction.com/press/florida-lawmakers-must-act-to-protect-elections-from-outside-influence/.

[19] Ari Berman & Nick Surge, *Leaked Video: Dark Money Group Brags About Writing GOP Voter Suppression Bills Across the Country*, Mother Jones, May 13, 2021, https://www.motherjones.com/politics/2021/05/heritage-foundation-dark-money-voter-suppression-laws/.

11

Ingoglia—the sponsor of HB 7041, the companion voter-suppression bill to SB 90, in the Florida House of Representatives.[20]

Discovery has confirmed Heritage's deep involvement in SB 90's passage. Mark Earley, the Leon County Supervisor of Elections, testified that the "underlying reasoning behind the bill was to adhere to agendas" of the "Heritage Foundation . . . [and] the "remain[s] of the Trump campaign." Mark Earley Dep. Tr. 117:5–118:8, Oct. 8, 2021 (attached as Exhibit D). Supervisor Earley further testified that Heritage's role was either "a matter of fact or a matter of understanding from everybody involved" in SB 90's passage, including legislators. *Id*. In addition, documents that Heritage Action was compelled to produce reveal that Heritage engaged in text-message conversations with Florida state legislators. Ex. C.

The cases Heritage Action cites also do not support the proposition that the information Plaintiffs seek should be protected from disclosure under the First Amendment Associational Privilege to petition the government. In *Wyoming v. USDA*, the court upheld the Magistrate Judge's Order which "concluded that the Associational Privilege did not protect . . . [the disclosure of] generalized information about their activities (i.e., inter-group lobbying efforts) relating to the four agency actions at issue." 239 F. Supp. 2d 1219, 1238 (D. Wyo. 2002), *appeal dismissed as moot and vacated on other grounds*, 414 F.3d 1207 (10th Cir. 2005). In *AFL-CIO v. FEC*, the court held that the compelled "public disclosure of an association's *confidential internal materials*

---

[20] Ex. G, April 1, 2021 Email from Karen Jaroch to "Blaise for Florida"; Lobbyist Disclosure & Information, https://myfloridahouse.gov/LD/default.aspx?pn=Heritage+Action+for+America&lyi=8&tci=-1 (showing Heritage Action for America's lobbying regarding "election integrity" in SB 90 and HB 7041); *see also* Fla. Registered Legislative Branch Lobbyist Directory: 2021 Registrations by Lobbyist Name, at 256, https://www.floridalobbyist.gov/reports/Lobbyist_LEG_2021.pdf (listing lobbyist for HAFA, with effective date of Mar. 10, 2021).

. . . intrudes on the privacy association and belief guaranteed by the First Amendment." 333 F.3d 168, 177 (D.C. Cir., 2003) (internal quotations omitted; emphasis added). Again, neither of these cases help Heritage Action. The information that Plaintiffs seek here are, by definition, *not* confidential internal materials, but communications with public officials.

Heritage Action again cites a line of cases regarding journalistic privilege that the Southern District of Florida found unpersuasive, arguing that Plaintiffs must initially seek the information from other parties. Mot. at 21–22. Those cases are inapposite. As the Southern District of Florida noted, "Heritage is not a member of the press, nor do the subpoenas request the disclosure of confidential information. As such, the privilege is not applicable under the circumstances presented here." 2021 WL 4891300, *4 (S.D. Fla. Oct. 19, 2021) (Mot. Ex. G, at 6). The logic underlying the journalistic privilege is that "[w]ithout an unfettered press, citizens would be far less able to make informed political, social, and economic choices." *Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981). Heritage does not assert that it is a journalistic organization. Further, even if it could claim it is, Plaintiffs do not seek any information regarding instances in which Heritage acted as the press. Applying the "journalistic privilege" here would turn the privilege on its head— it is *Plaintiffs* here who seek to bring sunlight to the facts surrounding SB 90's passage, and *Heritage* who is resisting disclosure.

For all these reasons, the Southern District of Florida rejected Heritage Action's similar claims in denying its motion to quash the document subpoena. 2021 WL 4891300, *4 (S.D. Fla. Oct. 19, 2021) (concluding that "Heritage has failed to make the required prima facie showing of infringement of its First Amendment associational privilege" because (1) "Plaintiffs do not seek to reveal the identities of any Heritage members or donors" and (2) "Heritage has failed to demonstrate how disclosure of the specific information Plaintiffs request … would subject its

13

members to 'threats, harassment, or reprisals'") (Mot. Ex. G, at 7–8). The same logic should apply in the context of this deposition subpoena.

## II. Heritage Action Was Given Reasonable Time to Comply with Plaintiffs' Subpoena.

Heritage Action argues that it was not given "reasonable time to comply" with the subpoena. Mot. at 8. That argument is also without merit. Indeed, as the Local Rules of this Court explain, "[s]ervice of a notice of deposition seven days in advance of the date set for taking the deposition shall constitute, 'reasonable notice' to a party as required by Fed. R. Civ. P. 30(b)." D.D.C. Local Civil Rule 30.1. As even Heritage Action concedes, "courts have found fourteen days from the date of service to be presumptively reasonable." Mot. at 8.

Plaintiffs originally served Heritage Action with a subpoena for relevant documents on August 6, 2021—almost three months ago. Instead of negotiating with Plaintiffs regarding the scope of the documents subpoena, Heritage Action objected entirely. Heritage Action doubled down on its obstinate approach in response to Plaintiffs' subpoena for a 30(b)(6) deposition. Plaintiffs issued the subpoena for a deposition two weeks before the deposition notice in the subpoena. Despite being on notice for over two months that Plaintiffs sought information from Heritage Action regarding its involvement in SB 90, Heritage Action claims to be in a position of starting from scratch, having failed to (1) prepare for the potential outcome of complying with Plaintiffs' subpoena, (2) make any effort to negotiate the timing of the deposition or the scope of the topics, or (3) contact Plaintiffs until the day before the noticed deposition date, (and then only to state its intent to move to quash the deposition subpoena).

The Court should reject Heritage Action's continued attempts to avoid providing discovery in this time-sensitive case. Plaintiffs have made diligent efforts to seek relevant discovery in the Underlying Case, for which a bench trial is set to begin on January 31, 2022. Underlying Case,

ECF No. 165, ¶ 1. Heritage Action was on notice for over two months that Plaintiffs sought relevant documents and information regarding its involvement in the passage of SB 90, and was aware of Plaintiffs' demand for a 30(b)(6) deposition well in advance, and with ample time to prepare. Simply put, Heritage Action had reasonable time to comply with the subpoena.

### III.   Plaintiffs' Subpoena Is Proper and Complete.

Heritage Action also argues that Plaintiffs' motion is "deficient in form and content." Mot. at 5. None of Heritage Action's attempts to find technical fault with the subpoena has any substance, and this Court should reject them.

First, Heritage Action claims that the subpoena Plaintiffs issued "gives a time but fails to specify a place within 100 miles of Heritage Action." Mot. at 5. That is plainly incorrect. The subpoena indicated a "place" of "Remote Means // Law Offices of Nellie L. King, P.A." and noted that "[v]ideoconference software" will be used. Mot. Ex. A. Further, the "Notice of Taking Rule 30(b)(6) Subpoena and Deposition" attached to the Subpoena clearly states that "[c]ounsel for the parties, the witness, and the court reporter will all appear remotely using videoconference technology." Mot. Ex. A. Plaintiffs were clear that the deposition would proceed by Zoom, Cisco WebEx, Microsoft Teams, or similar videoconference software, and added West Palm Beach merely as a backup physical location for the deposition. Further, Heritage Action never communicated with Plaintiffs to resolve any genuine confusion that it may have had regarding the location of the deposition.

Second, Heritage Action contends that it is incorporated in, and has its principal place of business in, Washington, D.C., more than 100 miles from West Palm Beach, and it protests that the subpoena is therefore deficient. Mot. at 5–7. But even a quick look at the fact of the documents served refutes this contention. As the subpoena and notice of deposition clearly indicated, the

15

deposition will take place by videoconference and require no travel on the part of the 30(b)(6) deponent or deponents. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021) ("[A] party may use a Rule 45 subpoena to compel remote testimony by a witness from anywhere so long as the place of compliance (where testimony will be given by the witness and not where the trial will take place) is within the geographic limitations of Rule 45(c)"); *Int'l Seaway Trading Corp. v. Target Corp.*, No. 0:20-mc-86-NEB-KMM, 2021 WL 672990, at *5 (D. Minn. Feb. 22, 2021) ("the 100-mile limitation now found in Rule 45(c) has to do with the place of *compliance*; not the location of the court from which the subpoena issued."); *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 815 (D. Md. 2020) ("Given the modification of the deposition notice to provide for a remote deposition over Zoom or other teleconferencing platform, the deposition notice no longer requires [respondents] to travel more than 100 miles (or at all) to comply, so the Court declines to address [the] argument that the subpoena compels [respondents] to comply outside of the geographical bounds of Rule 45(c)."). In addition, provided that it will not further delay Plaintiffs' discovery in this time-sensitive election-related case, Plaintiffs are willing (if Heritage Action insists) to take the deposition in person in the District of Columbia at a mutually agreed-upon location.

Third, Heritage Action asserts that Plaintiffs' subpoena is procedurally flawed because it "fails to designate a place where Heritage Action can be required to appear," Mot. at 5–6, or "provide for the administration of an oath to Heritage Action by an officer authorized to administer oaths . . . by federal law," Mot. at 6. That argument is also unfounded. Federal Rule of Civil Procedure 28(a)(1)(A)—which Heritage Action cites in support of its argument—merely states that a "deposition must be taken before: . . . an officer authorized to administer oaths either by federal law or by the law in the place of examination." Here, Plaintiffs can arrange for the court

reporter on the videoconference deposition to be a notary public in the "place of examination," regardless of whether that place is within the District of Columbia.

Finally, Heritage Action states that it "declines to give an oath by remote means," as it claims to be permitted to do under Florida Statutes section Stat. § 117.231(3). Mot. at 6. This argument fails for multiple reasons. To begin with, "a [state] procedural rule would not be applicable to a matter tried in federal court." *Bellamy v. Molitor*, 108 F.R.D. 1, 1 (W.D. Ky. 1983). Furthermore, even if the statute might one day have some effect here (it will not), the provision of the Florida Statutes cited by Heritage Action was added by Florida Laws 2021, c. 2021-137, § 5, and is not effective until January 1, 2022. *See id*. § 11 ("This act shall take effect January 1, 2022."). And, as noted above, Plaintiffs would, if necessary, take the deposition of Heritage Action's corporate designee in person at a mutually agreed-upon location in the District of Columbia, so long as doing so would not delay the deposition past the November 10, 2021 deadline set by the court in the Underlying Case.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court (1) issue an Order for Heritage Action to Reply in an expedited fashion (or issue an Order that no reply shall be made), given the time-sensitivity of this case and the November 10, 2021 deadline to depose Heritage Action's 30(b)(6) representative; and (2) deny Heritage Action's Motion to Quash and order Heritage Action to provide a date or dates at which it will appear for a Rule 30(b)(6) deposition on or before November 10, 2021.

Dated: November 4, 2021                                      Respectfully submitted,

P. Benjamin Duke*
Shira M. Poliak*
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1270
pbduke@cov.com

Robert D. Fram*
Covington & Burling LLP
415 Mission Street
San Francisco, CA 94105
415-591-7025
rfram@cov.com

Benjamin L. Cavataro**
Morgan E. Saunders*
Elizabeth T. Fouhey*
Michael A. Fletcher II*
Covington & Burling LLP
850 Tenth Street, N.W.
Washington, DC 20001
202-662-5693
bcavataro@cov.com
msaunders@cov.com
efouhey@cov.com
mfletcher@cov.com

s/ Samuel Spital
Samuel Spital, Bar No. SS4839
Michael Pernick*
Morenike Fajana*
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
212-965-2200
mfajana@naacpldf.org

Amia L. Trigg*
Mahogane D. Reed*
NAACP Legal Defense & Educational
 Fund, Inc.
700 14th Street NW, Ste. 600 Washington, DC 20005
202-682-1300
atrigg@naacpldf.org

Nellie L. King**
The Law Offices of Nellie L. King, P.A.
319 Clematis Street, Suite 107
West Palm Beach, FL 33401
561-833-1084
Nellie@CriminalDefenseFla.com

*Admitted *pro hac vice* in the Underlying Case in the Northern District of Florida
**Admitted in the Northern District of Florida

*Counsel for Plaintiffs NAACP of Florida, Common Cause, and Disability Rights Florida*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on the Court's CM/ECF system on November 4, 2021.

s/ Samuel Spital

*Counsel for Plaintiffs*
